UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LISA RICHARDSON | ) | 3:18-CV-00448 (KAD) |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NANCY A. BERRYHILL, *Acting* | ) | |
| *Commissioner of Social Security* | ) | |
| *Administration*, | ) | |
|     Defendant. | ) | SEPTEMBER 30, 2019 |

**MEMORANDUM OF DECISION**

Kari A. Dooley, United States District Judge

Plaintiff Lisa Richardson (the "Plaintiff") brings this administrative appeal pursuant to 42 U.S.C. § 405(g). She appeals the decision of defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, (the "Commissioner") denying her applications for disability and disability insurance benefits pursuant to Title II of the Social Security Act (the "Act") and supplemental security income benefits pursuant to Title XVI of the Act. The Plaintiff moves to reverse the Commissioner's decision, challenging the Administrative Law Judge's ("ALJ") determination of her residual functional capacity ("RFC") and the jobs she is capable of performing in light of that RFC. The Commissioner contends that its decision is supported by substantial evidence in the record and moves for an order affirming the decision. For the reasons set forth below, the Plaintiff's Motion for Judgment on the Pleadings (ECF No. 24) is DENIED and the Commissioner's Motion to Affirm (ECF No. 30) is GRANTED.

**Standard of Review**

It is well-settled that a district court will reverse the decision of the Commissioner only when it is based upon legal error or when it is not supported by substantial evidence in the record. *See Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997); *see also* 42 U.S.C. § 405(g) ("The

1

findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ."). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue,* 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted). The court does not inquire as to whether the record might also support the plaintiff's claims but only whether there is substantial evidence to support the Commissioner's decision. *Bonet ex rel. T.B. v. Colvin,* 523 Fed. Appx. 58, 59 (2d Cir. 2013). Substantial evidence can support the Commissioner's findings even if there is the potential for drawing more than one conclusion from the record. *See Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017). The court can reject the Commissioner's findings of facts "only if a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin.* 683 F.3d 443, 448 (2d Cir. 2012). Stated simply, "if there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian v. Astrue,* 708 F.3d 409, 417 (2d Cir. 2013).

**Factual and Procedural History**

On June 24, 2014, the Plaintiff filed an application for disability and disability insurance benefits pursuant to Title II of the Act. On September 19, 2014, the Plaintiff filed an application for supplemental security income benefits pursuant to Title XVI of the Act. In both applications, she alleged an onset date of February 22, 2014. The Plaintiff's applications were denied initially on October 17, 2014 and upon reconsideration on February 26, 2015. Thereafter, hearings were held before an Administrative Law Judge ("ALJ") on September 15, 2016, May 1, 2017, and August 21, 2017. On September 13, 2017, the ALJ issued a written decision denying the Plaintiff's applications.

In her decision, the ALJ followed the sequential evaluation process for assessing disability claims.[1] At Step 1, the ALJ determined that the Plaintiff has not been engaged in substantial gainful activity since the claimed onset date. At Step 2, the ALJ determined that the Plaintiff had several severe impairments, including obesity, osteoarthritis, muscle disorder, degenerative joint disease, and affective disorders. At Step 3, the ALJ concluded that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Appendix 1. At Step 4, the ALJ concluded that the Plaintiff, in relevant part, has:

> the residual functional capacity ["RFC"] to perform light work . . . except she could stand and walk four hours. . . . She is capable of performing simple, routine tasks with occasional interaction with others with tasks performed independently rather than in groups or teams. She requires a predicable routine.

(R. 16.) The ALJ further found that the Plaintiff does not have the RFC to perform her past relevant work. Finally, at Step 5, the ALJ concluded that there are a significant number of jobs in the national economy that the Plaintiff could perform, including Assembler, Solderer, and Gluer. In addition to these light exertional level jobs, the ALJ further noted that the vocational expert testified that there were three other sedentary jobs that the Plaintiff could perform. Accordingly,

---

[1] Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether a claimant's condition meets the Act's definition of disability. *See* 20 C.F.R. § 404.1520. In brief, the five steps are as follows: (1) the Commissioner determines whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner determines whether the claimant has a "severe impairment" which limits her mental or physical ability to do basic work activities; (3) if such a "severe impairment" is established, the Commissioner next determines whether the medical evidence establishes that the claimant's impairment "meets or equals" an impairment listed in Appendix 1 of the regulations; (4) if the claimant does not establish the "meets or equals" requirement, the Commissioner must then determine the claimant's residual functional capacity to perform her past work; (5) if the claimant is unable to perform her past work, the Commissioner must next determine whether there is other work in the national economy which the claimant can perform. 20 C.F.R. 404.1520(a)(4)(i)-(v). The claimant bears the burden of proof with respect to Step 1 through Step 4, while the Commissioner bears the burden of proof as to Step 5. *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008); *McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

the ALJ found that the Plaintiff was not disabled within the meaning of the Act. This appeal followed.

**Discussion**

**The Plaintiff's Residual Functional Capacity**

The Plaintiff raises four challenges to the ALJ's RFC determination. She claims that the ALJ erred: (1) by concluding that she could perform light work even though the state agency consultant at the reconsideration level found that she had an RFC for only sedentary work; (2) by not including some of the restrictions imposed by the state agency consultant; (3) by relying on the opinions of the Commissioner's consulting psychologist over that of her treating social worker; and (3) by failing to develop the record adequately concerning her mental RFC. The Commissioner disputes each of these claims of error. The Court addresses the claims in turn.

*The ALJ's Physical RFC Findings*

The Plaintiff first argues that the ALJ's RFC determination is erroneous because the ALJ credited the findings of the consulting physician, Dr. Khurshid Khan, but rejected Dr. Khan's finding that the Plaintiff could perform only sedentary work. The Commissioner responds that the ALJ's RFC determination is supported by substantial evidence in the record and is, in fact, consistent with Dr. Khan's opinion. The Court agrees with the Commissioner.

In the Plaintiff's Disability Determination Explanation at the reconsideration level, Dr. Khan made several findings concerning the Plaintiff's exertional limitations. For example, he found that the Plaintiff could frequently lift or carry ten pounds, but she could only occasionally lift or carry twenty pounds. He also found that the Plaintiff could stand and walk for a total of four hours and sit for about six hours a day. The ALJ accepted Dr. Kahn's findings concerning the Plaintiff's exertional limitations and explicitly included almost all of them in the physical RFC

determination. The only limitation that Dr. Khan found that the ALJ did not include in the RFC was a limitations with respect to right foot controls, specifically, "[n]o constant foot controls [right lower extremity]." The Plaintiff argues that this discrepancy undermines the accuracy of the ALJ's RFC determination, as she gave weight to Dr. Khan's opinion.

The discrepancy is immaterial. Light work requires only "some pushing and pulling of . . . leg controls." 20 C.F.R. § 404.1567(b). The RFC, even were it to include this additional limitation, would therefore not preclude the finding that Plaintiff can engage in "light work," *i.e.*, positions that do not require "constant" foot control usage. Moreover, there is no evidence that the light work jobs that the ALJ found that the Plaintiff could perform at Step Five are ones that require right-leg foot controls such that they would be inconsistent with this allegedly missing limitation.[2] *See Whitaker v. Berryhill*, No. 3:17-cv-01337 (SRU), 2018 WL 4583508, at *13 (D. Conn. Sept. 25, 2018) ("Even in the face of an oversight, the ALJ's decision may be upheld if the error was 'harmless,' that is, if other 'substantial evidence in the record' supports the ALJ's conclusions."). Therefore, even if the ALJ erred by not including the foot controls limitation, it would not undermine the findings at Step Five.

The Plaintiff also argues that the ALJ was precluded from finding a light work RFC because Dr. Khan found that she was limited to sedentary work. As an initial matter, it is unclear whether the sedentary finding at the reconsideration level was made by Dr. Khan or the Disability Adjudicator. *See* Program Operations Manual System (POMS) DI 24501.001(B)(1)(c), available at https://secure.ssa.gov/poms.nsf/lnx/0424501001. It is the view of the Commissioner that it was the Disability Adjudicator who rendered that opinion. In any event, the ALJ was not required to

---

[2] The Plaintiff contends, without citation to any authority, that the ALJ was required to include the right foot controls limitation as a matter of law because she assigned controlling weight to Dr. Khan's opinion. The Court disagrees.

5

accept the RFC finding made at the reconsideration level simply because she credited Dr. Kahn's medical findings. To the contrary, the ALJ has an independent duty and the exclusive authority to determine the Plaintiff's RFC based on the entire record before her. *Fiorante v. Comm'r of Soc. Sec.*, No. 2:16-cv-05731 (ADS), 2018 WL 3057705, at *7 (E.D.N.Y. June 19, 2018) ("Determining a claimant's RFC is the sole province of an ALJ."); *Cruz v. Colvin*, No. 1:15-cv-00176 (WMS), 2017 WL 1190488, at *4 (W.D.N.Y. Mar. 31, 2017) ("The RFC determination is at the sole discretion of the ALJ . . . ."); *see* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . . , the administrative law judge . . . is responsible for assessing your residual functional capacity."). In this case, after thoroughly reviewing the evidence in the record, the ALJ did just that and she concluded that the Plaintiff had the RCF to perform light work, subject to several exertional limitations. This determination is supported by substantial evidence in the record.

### *The ALJ's Mental RFC Findings*

The Plaintiff next contends that the ALJ erred by accepting the opinion of the consulting psychologist, Dr. Billings S. Fuess, concerning her mental RFC over that of her treating social worker.[3] The Plaintiff argues that Dr. Fuess' opinion and analysis were flawed because he placed too much weight on notes and opinions of the Plaintiff's treating physician assistant concerning her mental RFC. The Plaintiff also accuses Dr. Fuess of misstating and mischaracterizing the facts in the record, including the nature and kind of evidence upon which he was relying. The Commissioner responds that the ALJ's decision to give weight to Dr. Fuess' opinion was appropriate and supported by the record. The Court agrees with the Commissioner.

---

[3] The Plaintiff also suggests that the ALJ erred by giving greater weight to the consulting psychologist than to her treating psychiatrist, but, as discussed later in this opinion, the Plaintiff's treating psychiatrist did not offer any opinion concerning the Plaintiff's mental RFC. Accordingly, the ALJ could not have erred by not giving weight to a non-existent opinion.

6

During the relevant period, the Plaintiff received mental health treatment principally from Susan Feldman, a licensed clinical social worker, with whom she met on a weekly basis by phone or in person. Feldman's notes reflect both positives and negatives in the Plaintiff's overall mental health. On the one hand, the Plaintiff often reported feeling anxious, depressed, or overwhelmed and occasionally reported having panic attacks and difficulty socializing. The Plaintiff also frequently talked with Feldman about her various inter-personal conflicts with her family members and others, such as her frustration at having to care for her grandmother and her suspicions that her fiancé was cheating on her. On the other hand, the Plaintiff had periods where she reported doing better and feeling as though her anxiety was more under control. Feldman's notes also reflect that the Plaintiff was actively engaged in the care of her son and grandmother, even if it was emotionally taxing at times. Indeed, the Plaintiff appears to be a caring and attentive mother, often expressing concerns about her sons physical, social, and educational development and seeking advice on how to best help him.

In support of the Plaintiff's applications, Feldman provided several medical source statements concerning the Plaintiff's mental RFC.[4] In most of these statements, Feldman identified the Plaintiff's sole diagnosis as major depressive disorder, but one indicated that she had diagnoses for "anxiety, depression, chronic pain." (R.1435.) The statements all indicate that the Plaintiff suffers from marked functional limitations due to these impairments, but they are inconsistent in some respects. For example, in the questionnaire dated October 9, 2014, Feldman described the Plaintiff as appearing "disheveled" and having particularly marked functional limitations across the board. (R. 601.) In the questionnaire dated her January 6, 2015, however, Feldman the Plaintiff as "well groomed, cares for hygiene, [and] casually dressed" and reported the Plaintiff having less

---

[4] Feldman's opinions were not entitled to controlling weight because Feldman is not an "acceptable medical source." *See* 20 C.F.R. § 404.1502(a).

7

marked limitations than in the 2014 questionnaire. (R. 1059.) Finally, the questionnaire dated July 21, 2016 indicates that the Plaintiff has marked limitations in daily living, social functioning, and concentration, persistence and pace. But, in stark contrast to the earlier questionnaires, it also indicates that the Plaintiff has no limitations in her ability to, *inter alia*, "[s]ustain an ordinary work routine without supervision," "[r]espond appropriately to changes in the work setting," and "[m]aintain socially appropriate behavior, and to adhere to basic standards of neatness and cleanliness." (R. 1374.) It further indicates that the Plaintiff has only a 5 percent limitation in her ability to, *inter alia*, "carry out very short and simple instructions," "[m]ake simple work-related decisions," "[r]espond appropriately to changes in the work setting," and "[s]et realistic goals or make plans independently of others." (*Id.*)

In addition to seeing Feldman, the Plaintiff received treatment from Dr. Barbara G. Orrok every four to six months for medication. Dr. Orrok's clinical notes are more spartan than Feldman's notes, and reflect some frustration on Dr. Orrok's part concerning the Plaintiff's lack of progress in her mental and physical health. Dr. Orrok's notes further reflect diagnoses for obsessive-compulsive disorder, malingerer (conscious simulation), and personality disorder, unspecified. Dr. Orrok also initially diagnosed the Plaintiff with major depressive disorder, recurrent, moderate, but later ruled out that diagnosis. It also appears that, at one point, the Plaintiff was diagnosed with a mood disorder, which was later changed in 2014 to a diagnosis for an "anxiety group disorder." (R. 1576.) Dr. Orrok did not provide any medical source statements or otherwise offer a formal opinion concerning the impact of these impairments on the Plaintiff's mental RFC.

Dr. Fuess, a licensed psychologist with almost thirty years of experience, testified as a consultant at the hearings on the Plaintiff's applications. He testified at length on two separate

occasions concerning his assessment of the Plaintiff's mental RFC. In preparation for his testimony, Dr. Fuess reviewed almost all of the record, including the Plaintiff's treatment notes from Feldman, Dr. Orrok, and her other treatment providers.[5] Dr. Fuess disagreed that the record supported the significant functional limitations advocated by Feldman and, instead, opined that the Plaintiff was capable of independent functioning on a sustained basis at work. More specifically, he concluded that the Plaintiff could perform simple tasks without issue, but she had mild to moderate limitations in concentration, persistence and pace, moderate limitations for adaptation, and serious limitations when interacting with the public and strangers. In support of this opinion, Dr. Fuess explained that there was evidence in the record, including in Feldman's own notes, that the Plaintiff capable of caring for her son and grandmother. He further observed that the notes of the Plaintiff's other treatment providers did not reveal any concerns regarding her presentation, mood, and grooming at medical appointments. Although some of the Plaintiff's treatment providers were not medical doctors, and therefore had unknown psychology training, Dr. Fuess noted that some of the Plaintiff's treatment providers are medical doctors who would have received training on how to detect psychological issues. All of this, in Dr. Fuess' opinion, undermined Feldman's assertion that the Plaintiff suffered from such marked functional limitations.

In her decision, the ALJ also found that Feldman's medical source statements were not supported by the evidence in the record, including Feldman's own notes. It is therefore not surprising that she afforded "great weight" to the testimony and opinion of Dr. Fuess and explained in detail why she was accepting his opinion and rejecting that of Feldman. (R. 21–22.)

On appeal, the Plaintiff argues that the ALJ erred by accepting the opinion of Dr. Fuess because he was an unreliable witness who disregarded the opinions and notes of Feldman and Dr.

---

[5] The only portion of the record that Dr. Fuess did not review was a statement provided by Feldman concerning the Plaintiff's work history.

9

Orrick in favor of those of the Plaintiff's treating physician assistant, Rebecca Grillo. However, this was clearly not the case, as previously discussed. Dr. Fuess rejected Feldman's medical source statements in which she opined that the Plaintiff had marked functional limitations, but he expressly considered Feldman's and Dr. Orrok's clinical notes in his analysis. Indeed, he disagreed with Feldman's assessment, in part, because it was inconsistent with her own notes. Dr. Fuess did not choose Grillo over Feldman and Dr. Orrick. He examined the entire record and determined based on the evidence contained therein to reject Feldman's opinion.

The Plaintiff also contends that it was an error for the ALJ and Dr. Fuess to consider and rely upon the observations of the Plaintiff's other treatment providers when determining her mental RFC. But each of the Plaintiff's providers had the opportunity to observe her firsthand in a clinical setting, even if it was not for purposes of providing mental health treatment. Grillo in particular saw the Plaintiff on a monthly or bi-monthly basis over the course of several years and commented on her presentation at each visit.[6] Although Grillo is only a physician's assistant, with unknown psychology training, the Plaintiff had other treatment providers who were licensed medical doctors trained on how to look for psychological symptoms. The observations of all of these treatment providers concerning the Plaintiff's mood, affect, and presentation at her appointments is certainly probative of the Plaintiff's mental RFC. Plaintiff cites to no authority that consideration of these records was in any way improper. To the contrary, it is clear that the entire record must be considered in determining the appropriate RFC. *Jones v. Barnhart*, No. 04-cv-02772 (FB) (VVP), 2004 WL 3158536, at *6 (E.D.N.Y. Feb. 3, 2004) ("An ALJ has a duty to 'consider all evidence

---

[6] The Plaintiff argues that the observations of Grillo are not worthy of credence because these notes were the same for each visit. The Commissioner responds that "Plaintiff has provided no reason to find PA Grillo's notes unreliable, other than [the Plaintiff's] own self-serving statement that they must have been the result of an unchanged electronic medical record form." (Def.'s Br. at 14, ECF No. 30-1.) Instead, the Commissioner argues that the more plausible explanation is that Grillo's notes did not vary is because the Plaintiff's presentation was consistent from one appointment to the next. The Court agrees with the Commissioner's analysis. There is no basis in the record for concluding that Grillo's and other treatment providers' notes about the Plaintiff's presentation are unreliable.

in [a claimant's] case record'"); 20 C.F.R. § 404.1520(a)(3) ("We will consider all evidence in your case record when we make a determination or decision whether you are disabled."); *accord* 20 C.F.R. § 416.920(a)(3); *see also* SSR 96–5P, 1996 WL 374183, at *3 (July 2, 1996) ("The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.").

And, specifically on this issue, the record reflects that the Plaintiff was able to attend regular medical appointments and none of her treatment providers expressed any concerns about her mental functionality. Instead, they consistently describe her as being well-groomed, pleasant, and presenting with a normal mood, affect, and behavior. All of this supports the ALJ's and Dr. Fuess' opinion that the Plaintiff was not as functionally limited as Feldman opined.

Finally, the Plaintiff accuses Dr. Fuess of misstating and mischaracterizing the facts in the record, including the nature and kind of evidence upon which he was relying. This argument is simply a renewal of the argument advanced by the Plaintiff during her cross-examination of Dr. Fuess,[7] and, upon review of the record, none of them provide a basis for concluding that Dr. Fuess' testimony was unreliable.

In short, this is a case where the ALJ was confronted with conflicting medical evidence. Feldman opined that the Plaintiff suffered from significant mental functional limitations, while Dr.

---

[7] For example, the Plaintiff takes issue with Dr. Fuess' assertion that the Plaintiff did not have an eating disorder despite being morbidly obese and receiving treatment for this issue. As Dr. Fuess observed, however, the Plaintiff has never been diagnosed with an eating disorder in the clinical sense. Dr. Fuess also repeatedly explained that he was uncomfortable making an eating disorder diagnosis himself because he is not an eating disorder specialist and did not have enough information to make such a diagnosis. There is nothing improper or inherently suspect about this testimony and certainly it does not provide a basis upon which the ALJ was required to reject Dr. Fuess' opinions. The Plaintiff also accuses Dr. Fuess of mischaracterizing Grillo as being a medical doctor, but that is not accurate either. A review of Dr. Fuess' testimony makes clear that he understood Grillo to be a physician's assistant. Further, it is abundantly clear that ALJ understood that Grillo was a physician's assistant, as she identified her as such in her decision.

11

Fuess believed that the Plaintiff's limitations were far less marked and that she was capable of independent functioning on a sustained basis. "Genuine conflicts in the medical evidence are for the Commissioner to resolve," not this Court. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); *see also Richardson v. Perales*, 402 U.S. 389, 399 (1971) (noting that it is the duty of the trier of fact to resolve conflicts in medical evidence). Here, the manner in which the ALJ resolved the conflict in this case was entirely reasonable. The ALJ did not conclude that the Plaintiff has no functional limitations due to her mental health impairments. She accepted that the Plaintiff could perform only simply, routine tasks, needed restrictions for interacting with the public and strangers, and needed a predictable routine. All of these limitations were incorporated into the RFC finding and are supported by the testimony of Dr. Fuess and the other evidence in the medical record concerning the Plaintiff's mental functionality, including Feldman's notes. The Plaintiff understandably believes that greater restrictions should have been imposed. But the substantial evidence standard is "a very deferential standard— even more so than the 'clearly erroneous' standard. The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). The Court is not persuaded that a reasonable factfinder would have to conclude that the Plaintiff's mental RFC should have been more restrictive.

### *The Adequacy of the Record*

The Plaintiff argues that because Dr. Fuess "declared that the records of Susan Feldman, LCSW and Barbara Orrok, M.D., did not contain sufficient information of plaintiff's functional limitations," and instead relied on Grillo's notes as a result, "the ALJ had an obligation to further develop the record." (Plf.'s Br. at 36, ECF No. 24-1.) The Commissioner responds that the ALJ

had no duty to develop the record further because there was sufficient evidence in the record to determine whether the Plaintiff was disabled. The Court agrees with the Commissioner.

"[T]he ALJ, unlike a judge in a trial, must . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding, even if the claimant is represented by counsel." *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999) (citation omitted; internal quotation marks omitted). "Where, however, the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 Fed. Appx. 5, 8 (2d Cir. 2017) (summary order) (citations omitted; internal quotation marks omitted); *accord Tankisi v. Comm'r of Soc. Sec.*, 521 Fed. Appx. 29, 34 (2d Cir. 2013) (summary order). Similarly, "[w]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal quotation marks omitted).

Here, Dr. Fuess expressly stated at both hearings at which he testified that he had sufficient information before him to render an opinion on the Plaintiff's mental health status. At the second hearing, Dr. Fuess did observe, in reference to Dr. Orrok's notes, that "these notes are rather general and really do not give a lot of detail regarding [the Plaintiff's] functioning." (R. 39; *see also* R. 41.) But, based on the totality of the record before him, Dr. Fuess was able and willing to render an opinion concerning the Plaintiff's mental health and functionality. The ALJ was not required to develop the record further simply because Dr. Fuess believe that the record did not support Feldman's opinion.

When determining whether an ALJ had a duty to develop the record, the salient question is whether the record was sufficient for the ALJ to make a disability determination. It plainly was

in this case. When making her decision, the ALJ had before her Feldman's treatment notes going back to 2014, which described her complaints, symptoms, goals, and progress. The ALJ also had the benefit of Dr. Orrok's notes and the opinions and diagnoses rendered therein. Notably, the Plaintiff had great difficulty obtaining both Feldman's and Dr. Orrok's notes and did not have them at the initial hearing before the ALJ. The ALJ kept the record open after that hearing and provided the Plaintiff with additional time to try to obtain the notes via subpoena. When the Plaintiff obtained Feldman's notes, the ALJ convened the first supplemental hearing at which Dr. Fuess testified. The ALJ further agreed at the end of that hearing to hold the record open again for two more weeks so that plaintiff's counsel could continue to try to obtain Dr. Orrok's records. When those records were finally obtained, the ALJ again elected to hold a supplemental hearing so that Dr. Fuess could opine on those records as well. The Plaintiff's counsel did not thereafter seek to submit additional records concerning her mental health. The notes of Feldman, Dr. Orrok, the Plaintiff's other treatment providers along with Dr. Fuess' testimony over the course of two days provided the ALJ with sufficient information to decide the Plaintiff's mental RFC.

Under these circumstances, the ALJ was not required to develop the record further. *See Eusepi v. Colvin*, 595 Fed. Appx. 7, 9 (2d Cir. 2014) (summary order) ("To be sure, the ALJ's general duty to develop the administrative record applies even where the applicant is represented by counsel, but the agency is required affirmatively to seek out additional evidence only where there are 'obvious gaps' in the administrative record."); *see also Pellam v. Astrue*, 508 Fed. Appx. 87, 90 (2d. Cir. 2013) (summary order) (concluding that ALJ had no obligation to supplement record by acquiring additional medical information where ALJ had all of the claimant's treating physician's treatment notes and consulting examining physician's opinion supported ALJ's assessment of RFC).

**The ALJ's Analysis at Step 5**

The Plaintiff next argues that the ALJ erred at Step 5 because he failed to resolve conflicts between the testimony of the vocational expert and the Dictionary of Occupational Titles ("DOT").[8] In particular, the Plaintiff argues that the ALJ failed to obtain a reasonable explanation from the vocational expert concerning why the jobs identified by that expert would meet her RFC restrictions for standing, walking, and interacting with others. The Commissioner responds that there is no discrepancy between the Plaintiff's RFC, the vocational expert's testimony, and the DOT, and, therefore, the ALJ was not required to inquire further on the issues identified by the Plaintiff. The Court agrees with the Commissioner.

As the Second Circuit Court of Appeals recently explained, ALJs have a duty to identity and inquire into all apparent conflicts, even non-obvious ones, between a vocational expert's testimony and the DOT. *Lockwood v. Comm'r of Soc. Sec.*, 914 F.3d 87, 92 (2d Cir. 2019). If the ALJ fails in this duty, then the vocational expert's testimony cannot represent substantial evidence capable of demonstrating that the claimant can successfully perform work in the national economy and remand for further proceedings is appropriate. *Id.* at 94.

Here, there are no apparent conflicts between the testimony of the vocational expert and the DOT. The Plaintiff first argues that the ALJ erred by not specifically asking the vocational expert why the jobs he identified as light would accommodate the walking and standing restriction in the RFC. Such an inquiry is not required under *Lockwood*, and the Plaintiff cites no authority stating otherwise. In any event, it was apparent from the hearing transcript that the vocational expert knew and understood that the ALJ's hypotheticals included a standing and walking restriction. The ALJ first asked the vocational expert whether someone with the Plaintiff's RFC,

---

[8] The Plaintiff also raises a claim of error based on the ALJ's application of the wrong RFC at Step 5. Because the Court disagrees that the ALJ erred when determining the Plaintiff's RFC, this claim necessarily fails as well.

15

including the standing and walking restriction, could perform her past relevant work. The vocational expert initially responded that she could, but then he corrected himself "because of the limitation of standing and walking for four hours." (R. 175.) The ALJ then asked the vocational expert whether there were "jobs in the national or regional economy that she could perform, then?" (*Id.*) The vocational expert then identified the jobs of Assembler, Solderer, and Gluer as "light, unskilled [jobs] . . . which would accommodate the limitation on being on her feet. . . ." Accordingly, it was clear that the vocational expert selected these jobs because they would accommodate the standing and walking restriction. The Plaintiff has not explained how the vocational expert's testimony conflicted with the DOT description of these jobs vis-à-vis the standing and walking restriction.

Next, the Plaintiff faults the ALJ for not exploring further why the vocational expert recommended the job of Assembler when the DOT position states that one must frequently work with others on the assembly bench and might be assigned to different work stations to suit production needs or to avoid fatigue. The ALJ found that the Plaintiff "is capable of performing simple, routine tasks with occasional interaction with others with tasks performed independently rather than in groups or teams." (R. 16.) She was further restricted to a "predictable routine." (*Id.*) There is no apparent conflict between this RFC and the DOT description. The Assembler position simply requires the individual to perform her discrete part of the assembling process independently and then hand it off to the next person along the assembly line. DOT 706.684-022 ("works at bench as member of assembly group assembling one or two specific parts and passing unit to another worker"). Accordingly, the Plaintiff would be able to work independently with limited interaction with others. In addition, the mere fact that an Assembler may be assigned to different work stations does not inherently mean that this job does not have a predictable routine,

as the Plaintiff could be required to change workstations in a predictable fashion. However, even if a conflict might be perceived and the ALJ erred by not making inquiry in this regard, such error would be harmless because the ALJ identified two other jobs that an individual with the Plaintiff's RFC could perform and that exist in significant numbers in the national economy. *Bavaro v. Astrue*, 413 Fed. Appx. 382, 384 (2d Cir. 2011) (summary order) ("The Commissioner need show only one job existing in the national economy that Bavaro can perform."); 20 C.F.R. § 404.1566(b) ("Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications."). The Plaintiff raises no challenges to the ALJ's findings concerning these other positions and as such, even if it was error to include the job of Assembler (or fail to inquire into a potential conflict between the DOT and the RFC), the outcome at Step Five would be the same.

**Conclusion**

For all the foregoing reasons, the Plaintiff's Motion for Judgment on the Pleadings is DENIED and the Commissioner's Motion to Affirm is GRANTED. The Clerk of Court is directed to enter judgment in favor of the Commissioner and close this matter.

**SO ORDERED** at Bridgeport, Connecticut, this 30th day of September 2019.

                                                */s/ Kari A. Dooley*
                                                KARI A. DOOLEY
                                                UNITED STATES DISTRICT JUDGE